## WASHINGTON PROPERTIES LIMITED PARTNERSHIP, Plaintiff,

### v.

### The RESOLUTION TRUST CORPORATION, Receiver for Baltimore Federal Financial, F.S.A., Defendant.

### Civ. A. No. 90–3002(CRR).

United States District Court,
District of Columbia.

May 1, 1992.

Deferred Ruling on Motion for Summary Judgment June 26, 1992.

Lorin H. Bleecker of Katz, Frome, Slan and Bleecker, P.A., Rockville, Md. (Susan J. Rubin and Gail B. Landau, on the brief), for plaintiff.

Thomas C. Beach, III of Whiteford, Taylor & Preston, Baltimore, Md. (Stephen F. Fruin, Gary S. Posner, and Michael D. Oliver, on the brief), for defendant.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

Before the Court is the defendant Resolution Trust Corporation's ("RTC") Motion for Summary Judgment in the above-captioned case.[1] The plaintiff, Washington Properties Limited Partnership ("Washington Properties", "WPLP") has opposed the Motion for Summary Judgment on the rescission claim, and moved for a stay on the motion as it relates to the other claims in the Complaint.

The plaintiff's request for a stay of the motion with respect to all claims except the rescission claim is based on the unusual procedural posture of this case. On October 11, 1991, this Court, pursuant to Rule 42(b) of the Federal Rules of Civil Procedure, and for expedition, economy, and in order to further the convenience of the parties, ordered a separate trial on the claim of rescission, an equitable matter.

---

1. A number of different cases were consolidated into this action, including two bankruptcy appeals brought by Washington Properties (originally Civil Action Nos. 92–69 and 92–70), and an action brought by the defendant against Washington Properties regarding the parties respective rights under a ground lease (originally Civil Action No. 92–150). The instant Motion for Summary Judgment involves only Washington Properties' claims against the defendant regarding a deed of trust (the original Civil Action No. 90–3002). When the Court refers to the "case" in this Memorandum Opinion, it refers to the claims involved in the original Civil Action No. 90–3002, which are the subject of the Motion for Summary Judgment.

*See* Order filed October 11, 1991. When the Motion for Summary Judgment was filed, trial was imminent on the rescission claim alone. Plaintiff accordingly took the position that the summary judgment motion on the eve of trial was premature as to all claims but the rescission claim.

On the date that the Court heard oral argument on the summary judgment motion, plaintiff filed for bankruptcy in the United States Bankruptcy Court for the District of Maryland. Trial was postponed to allow consideration of the effect of the bankruptcy on the jurisdiction of this Court to adjudicate the many issues before it.

Since trial has been postponed, it would now seem appropriate to rule on the Motion for Summary Judgment as to all claims. However, the Court believes that the plaintiff requested a stay in good faith and shall allow it an opportunity to respond to the defendant's motion as to the other claims before ruling. Accordingly, the Court addresses here the merits of summary judgment only as to rescission.

Upon careful consideration of the submissions of the parties, the arguments of counsel, the applicable law, and the entire record herein, the Court concludes that it must grant the defendant's Motion for Summary Judgment as to the rescission claim.

## I. *Background*

Washington Properties is the owner of the real property on which a building at 1301 Connecticut Avenue in Northwest Washington, D.C. stands. The owner of the building is 1301 Associates ("1301"), which leased the land from WPLP pursuant to a ground lease. In December, 1985, 1301 Associates, by its managing general partners James S. Sollins and Dianna J.R. Brochendorff, executed a Construction Loan Agreement and Deed of Trust Note in order to rehabilitate and renovate the property. To secure the loan, 1301 executed a Deed of Trust with Baltimore Federal Financial ("BFF"), the bank for which the RTC is acting as receiver in this action. Washington Properties joined in the Deed of Trust, subordinating all of its rights

under the ground lease to BFF, and giving BFF a right to foreclose upon the entire fee simple interest of the property in the event 1301 defaulted on the Deed of Trust.

Specifically, the Deed of Trust stated that:

> to secure the prompt payment of said indebtedness and all charges and advances ... Grantor [1301] and Landlord [WPLP] ... do hereby grant and convey in fee simple unto the Trustees all of their right, title and interest in and to the hereinafter described property

Complaint, Ex. D., at 2. The Deed of Trust further provided that

> It is the intent of this Deed of Trust that, in the event of a default hereunder, Trustees may sell at foreclosure and thereafter convey fee simple title to the Property, unencumbered by Grantor's [1301] or Landlord's [WPLP] leasehold interests under the Ground Lease or by the Landlord's reversionary interest in the Property ... Landlord covenants and agrees that the indebtedness secured hereby shall have priority in all respects over any claim of Landlord for rent or otherwise under the Ground lease ...

*Id.* at 4.

The Deed of Trust incorporated by reference, and was made subject to, all of the conditions and covenants in the Construction Loan Agreement. *Id.* at 12, § 1.26(a). Incorporated into the Construction Loan Agreement was the loan budget, which was annexed thereto. *See* Complaint, Ex. B. The Construction Loan Agreement provided in pertinent part that:

> All conditions of the obligations of the Lender [BFF] to make advances hereunder are imposed solely and exclusively for the benefit of the Lender and its assigns and no other persons shall have standing to require satisfaction of such conditions in accordance with their terms or be entitled to assume that the Lender will refuse to make advances in the absence of strict compliance with any or all thereof and no other person shall, under any circumstances, be deemed to be beneficiary of such conditions, any or all of which may be freely waived in whole or

**544**

in part by the Lender at any time in the sole and absolute exercise of its discretion.

*Id.* at 31, § 8.6 (emphasis added).

Another document executed at the time of the closing was a Collateral Assignment of Fees, which provided that all fees and expenses otherwise owing to Mr. Sollins and Ms. Brochendorff were to be placed in an escrow account to be maintained at BFF and used as additional collateral security for the loan. *See* Complaint, Ex. F. The Collateral Assignment included a clause which provided that

> [t]he failure of the Lender, at any time or times hereafter, to request strict performance by Guarantors [Sollins and Brochendorff] or Affiliate of any provision of this agreement shall not waive, affect ·or diminish any right of Lender thereafter to demand strict performance and compliance herewith. Any suspension or waiver by the Lender of a default under this Agreement, the Guaranty or the Loan Documents shall not suspend, waive or affect any other default thereunder, whether the same is prior or subsequent thereto and whether of the same or of a different type. No default by Guarantors or Affiliate shall be deemed to have been suspended or waived by Lender, unless such suspension or waiver is by an instrument in writing signed by Lender and directed to Guarantors or Affiliate, as applicable, specifying such suspension or waiver.

*Id.* ¶ 8.

Ultimately, BFF served notice on 1301 that the debt owed to it had matured and was in default. Shortly thereafter, 1301 filed for bankruptcy pursuant to Chapter 11 of the United States Bankruptcy Code.

Washington Properties now attacks the Deed of Trust under a number of theories. In its rescission claim, WPLP seeks to undo the contract and thereby prevent foreclosure on the property. WPLP claims that rescission is warranted because BFF was aware that it lacked the ability to properly administer its obligations contemplated in the Construction Loan Agreement and had no intention to fulfill these obligations. WPLP claims that BFF misrepresented to WPLP its ability to administer the Construction Loan and, by incorporation, the Deed of Trust, and in reliance on BFF's misrepresentations, WPLP was induced to execute the contracts. Complaint ¶ 62–65. WPLP also claims that BFF "wilfuly and immediately" rendered imperfect performance of its promises to disperse funds in accordance with the construction budget pursuant to the Construction Loan Agreement, and to require the escrowing of fees pursuant to the Collateral Assignment. *See* Pl.Opp. at 8; Pl. Statement of Genuine Issues in Dispute ¶¶ 9–23. Moreover, Washington Properties accuses BFF of failing to advise WPLP of deviations from the Construction Loan Agreement and Collateral Assignment agreement, Pl. Statement of Genuine Issues in Dispute ¶¶ 17, 21. WPLP contends that these acts and omissions prevented WPLP from protecting its interest once it entered into the agreement.

## II. *Analysis*

■ Rule 56(c) of the Federal Rules of Civil Procedure requires that the Court grant a motion for summary judgment if the pleadings and supporting affidavits and other submissions "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient". *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). However, it is well established that the Court must believe the non-movant's evidence and draw all justifiable inferences in its favor. *Id.* at 255, 106 S.Ct. at 2513.

■ The RTC contends, *inter alia,*[2] that Washington Properties' claims are barred as a matter of law under 12 U.S.C.

---

**2.** Because the Court finds the RTC's arguments regarding *D'Oench, Duhme* and 12 U.S.C. § 1823(e) dispositive, it need not reach the RTC's other arguments in support of its motion at this juncture.

§ 1823(e) and the *D'Oench, Duhme* doctrine.[3]

12 U.S.C. § 1823(e) provides that

No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it ... either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement:

(1) is in writing;

(2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution;

(3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and;

(4) has been, continuously, from the time of its execution, an official record of the depository institution.

Both the *D'Oench, Duhme* doctrine and 12 U.S.C. § 1823(e) apply to the RTC in its receivership capacity. *See* 12 U.S.C. § 1441a(b)(4); *Vernon v. Resolution Trust Corp.*, 907 F.2d 1101, 1102 n. 1 (11th Cir. 1990); *cf. FSLIC v. Two Rivers Assoc., Inc.*, 880 F.2d 1267, 1276–77 (11th Cir. 1989).

The Supreme Court, in a unanimous opinion, elaborated on the scope of 12 U.S.C. § 1823(e) and the meaning of the term "agreement" in that statute. *See Langley v. FDIC*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987). The Court noted that among the purposes of § 1823(e) are: (1) enabling bank examiners to rely on a bank's records in assessing the worth of the bank's assets (impossible if seemingly unqualified notes are subject to undisclosed conditions); and (2) assuring that unusual loan transactions are given "mature consideration" by senior bank officials, and preventing fraudulent insertion of new terms into a contract when a bank appears headed for failure. *Id.*, 484 U.S. at 92, 108 S.Ct. at 401. The Court stated that "agreement" in § 1823(e) extends to more than promises to perform acts in the future, and held that

Certainly, one who signs a facially unqualified note subject to an unwritten and unrecorded condition upon its repayment has lent himself to a scheme or arrangement that is likely to mislead the banking authorities, whether the condition consists of performance of a counterpromise (as in *D'Oench, Duhme*) or of the truthfulness of a warranted fact.

*Id.* 484 U.S. at 93, 108 S.Ct. at 402. The fact that a party claims that a representation was fraudulent and fraudulently induced them to secure a bank loan does not defeat the application of § 1823(e). A claim against the RTC for fraud in the inducement based on unwritten representations would therefore be barred under § 1823(e). *See id.*

The lower courts have adhered firmly to the *Langley* holding and have expanded its reach. *See, e.g. Kilpatrick v. Riddle*, 907 F.2d 1523, 1528 (5th Cir.1990) (noting that if defenses to a loan agreement are barred under *D'Oench, Duhme*, so are defense framed as causes of action); *FDIC v. Bell*, 892 F.2d 64, 66 (10th Cir.1989) (noting that fraudulent warranties are within the reach of § 1823(e), whether the result of "overt misrepresentation or deceitful omission"); *FDIC v. Texarkana Nat'l Bank*, 874 F.2d 264, 267 (5th Cir.1989); *FDIC v. Galloway*, 856 F.2d 112 (10th Cir.1988); *Federal Land Bank of Jackson v. Shaffett*, 757 F.Supp. 22, 24 (M.D.La.1991) (*D'Oench, Duhme* "doctrine prevents defenses such as lack of consideration, fraud by bank officials, agreements made in good faith by borrow-

---

**3.** *See D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). The exact nature of the relationship between *D'Oench, Duhme* line of cases and 12 U.S.C. § 1823(e) is somewhat unclear. *See American Fed'n of State, County and Municipal Employees v. FDIC*, 1992 U.S.Dist. LEXIS 2842, at 9 (D.D.C. March 11, 1992) (noting that the case law based on *D'Oench* and the statute has "cross-pollinated such that it is very difficult to decide where the statute ends and D'Oench begins" and that "the crucial question is the total protection that the statute and D'Oench together provide"). The Court bases its decision on the protection that *D'Oench* and the statute provide together.

ers, and that course of dealing has altered the loan agreement"); *Metcalf, Ltd. v. FSLIC*, 719 F.Supp. 953 (D.Colo.1988) (*D'Oench, Duhme* precludes fraud and negligence claims against FSLIC).

At bottom, WPLP's claim is based on fraud in the inducement, which is barred by § 1823(e), under *Langley* and its progeny. The plaintiff claims that BFF misrepresented its ability to administer the contracts and its intention to do so. It also contends that BFF wilfully disregarded its responsibilities with respect to disbursing funds under the construction loan budget and with respect to escrowing fees pursuant to the Collateral Assignment. Further, it alleges that BFF failed to inform WPLP of various deviations from the agreements. *See* discussion *supra* at 544. However, no official, written document executed contemporaneously with the Deed of Trust and meeting the requirements of § 1823(e) has been brought to the Court's attention in which BFF makes any representations about its ability to administer the contracts, or in which BFF accepts any duty either to assure 1301's strict compliance with the contracts or to inform WPLP in the event of deviations from the terms of the contracts. Moreover, the RTC has provided undisputed evidence that no such documents exist. *See* Def.Mot. Summary Judgment, Ex. 3, ¶ 6.[4]

In fact, the relevant written agreements explicitly disavow any duties on the part of BFF with regard to the conduct of which WPLP complains. As previously cited, the Construction Loan Agreement contains a clause stating that BFF's obligation to make advances under the loan budget is solely for the benefit of BFF and denying standing to any other party to require compliance with that aspect of the Construction Loan Agreement. Complaint, Ex. B at 31,

§ 8.6. Similarly, the Collateral Assignment explicitly contemplated that BFF would not require strict compliance with its terms, and states that BFF's failure to require strict compliance would not constitute a waiver of either its right to demand compliance or of its rights in the event of default. Complaint, Ex. F, ¶ 8.

Washington Properties attempts to distinguish its case from those previously cited and argues that § 1823(e) and the *D'Oench Duhme* doctrine should not apply. First, it contends that BFF breached the covenant of good faith and fair dealing which is implied into all contracts. *See Hais v. Smith*, 547 A.2d 986 (D.C.1988). It argues (without supporting authority) that an equitable doctrine such as that of *D'Oench Duhme* cannot be used to thwart the equitable doctrine of the implied covenant of good faith. Pl.Opp. at 8. The Court is not persuaded by this argument. First, this decision rests primarily on the application of the statutory provision 12 U.S.C. § 1823(e) rather than on the equitable common law doctrine. Second, where there is an allegation of fraud there must also be an implied allegation of a breach of the implied covenant of good faith and fair dealing, as fraud is antithetical to good faith. Therefore, to accept plaintiff's argument here would be to strip § 1823(e) of its power, and deprive of its power the Supreme Court's holding that fraud in the inducement claims are governed by § 1823(e). *See Langley*, 484 U.S. at 92–93, 108 S.Ct. at 402. This the Court declines to do. *See FSLIC v. Locke*, 718 F.Supp. 573, 582 (W.D.Tex.1989) (*D'Oench, Duhme* doctrine prevents a party from relying on unwritten representations and promises to support a claim of breach of the duty of good faith and fair dealing).

---

**4.** This exhibit is an affidavit from the asset manager averring that she has found no documents satisfying the requirements of § 1823(e) which evidenced any agreement by BFF to:

    a. Inform WPLP of BFF's knowledge, if any, regarding whether the loan guarantors were undercapitalized.;

    b. Inform WPLP in the event that BFF obtained knowledge that the loan guaranties were worthless;

    c. Guaranty or warrant that the loan would not go into default; or

    d. Monitor the loan transaction and disbursement draws for the benefit of WPLP

    e. Take any action, or refrain from taking any action for the benefit of WPLP.

Def.Mot.Summary Judgment, Ex. 3, ¶ 6.

At oral argument, for the first time, counsel for Washington Properties attempted to characterize the nature of its claim as one of fraud in the factum rather than fraud in the inducement. The Supreme Court suggested in *Langley* that a defense (or claim) of fraud in the factum might not be barred under § 1823(e), because such a defense renders the instrument entirely void. (Fraud in the inducement, by contrast, renders the instrument merely voidable.) *Langley,* 484 U.S. at 92–93, 108 S.Ct. at 402.

The factual allegations in the Complaint and in plaintiff's Statement of Genuine Issues in dispute do not support the characterization of its claim as fraud in the factum. Construing the facts in plaintiff's favor, WPLP was misled by BFF as to its intentions and abilities to administer the contracts effectively, as to the financial stability of 1301, and as to the efficacy of the mechanisms in place to minimize the possibility of default. *See generally* Complaint; Pl. Statement of Genuine Issues in Dispute. Even if all of these allegations are true, they would indicate that Washington Properties was fraudulently induced to enter the agreement, not that Washington Properties was the victim of fraud in the factum. Fraud in the factum "is the sort of fraud that procures a party's signature to an instrument without knowledge of its true nature or contents". *Id.* (citations omitted). The plaintiff does not allege that the wrong documents were signed or that it did not understand the contents thereof. In fact, it is undisputed that WPLP was represented by counsel in the negotiation of terms of the loan and at the loan closing and was fully aware of the contents of the Construction Loan Agreement, Deed of Trust and Deed of Trust Note. *See* Def.'s Statement of Facts Not in Dispute ¶ 9; Pl.s Statement of Genuine Issues in Dispute ¶ 1. Therefore there is no basis for a claim of fraud in the factum here that would prevent the application of § 1823(e).

Accordingly, the Court concludes that under 12 U.S.C. § 1823(e), and the case law interpreting that statute, WPLP's rescission claim against the RTC is barred as a matter of law. The RTC contends that this holding should apply to the other claims in Washington Properties' complaint. However, as discussed at the outset, the Court shall not rule on the other claims until plaintiff has had an opportunity to oppose the Motion for Summary Judgment as to those claims. However, the plaintiff is directed not to attempt to relitigate the issues decided in this Memorandum Opinion in its opposition. Rather, the plaintiff should point to arguments, if any, specific to the remaining counts and consistent with this Memorandum Opinion, as to why summary judgment is inappropriate for the remaining counts.

## III. *Conclusion*

Accordingly, for the reasons previously stated herein, the Court shall grant defendant's Motion for Summary Judgment on Washington Properties' rescission claim. The Court shall issue an appropriate Order on this date consistent with this Memorandum Opinion.

## ORDER

In accordance with the Court's Memorandum Opinion in the above-captioned action, filed on this date, it is, by the Court, this 1st day of May, 1992,

ORDERED that the defendant's Motion for Summary Judgment as to the plaintiff's rescission claim shall be, and hereby is, GRANTED. Accordingly, Count IV of the Complaint shall be, and hereby is, DISMISSED; and it is

FURTHER ORDERED that the plaintiff shall file its Opposition to the defendant's Motion for Summary Judgment as it relates to the remaining Counts of the Complaint no later than 4:00 p.m. on May 14, 1992. In its Opposition, the plaintiff should not attempt to relitigate the matters decided in the Court's Memorandum Opinion filed on this date. Rather, the plaintiff should offer concise arguments, if any, as to why summary judgment is inappropriate, for the remaining legal counts specifically, in light of the Court's decision; and it is

FURTHER ORDERED that the defendant shall file its reply no later than 4:00 p.m. on May 22, 1992.

## DEFERRED RULING ON MOTION FOR SUMMARY JUDGMENT

On May 1, 1992, the Court issued a Memorandum Opinion in the above-captioned case, granting the defendant's Motion for Summary Judgment on the rescission claim. The Court held that the rescission claim was barred as a matter of law under 12 U.S.C. § 1823(e) and the case law interpreting that statute. Because of the unusual procedural posture of the case, the Court deferred ruling on defendant's Motion for Summary Judgment as it related to the other claims in the Complaint in this action.[1] *See* Mem.Op. filed May 1, 1992 at 542–43. The additional claims allege breach of contract, breach of fiduciary duty, negligence, and fraud.

Plaintiff has now had an opportunity to file an opposition to defendant's Motion for Summary Judgment as it relates to the breach of contract, breach of fiduciary duty, negligence, and fraud counts, and the defendant has filed a reply. Therefore the motion is ripe for resolution as it relates to those claims.

The Court has carefully considered the arguments raised by plaintiff in its opposition to the Motion for Summary Judgment as it relates to the remaining counts. In its Memorandum Opinion, the Court instructed the plaintiff to avoid relitigating the issues already decided and to offer any specific arguments as to why summary judgment would be inappropriate for the remaining counts in particular. Mem.Op. at 547. The plaintiff has made a number of arguments; however, these arguments fail to demonstrate that the Court's holding as to the rescission claim is inapplicable to the remaining counts. The Court concludes,

therefore, that summary judgment must be entered in favor of the defendants for these counts.

The plaintiff makes two major arguments in its attempt to demonstrate that 12 U.S.C. § 1823(e) and the *D'Oench, Duhme* doctrine [2] do not bar the remaining claims.[3] Plaintiff contends that the conduct of the bank rose to the level of fraud in the factum, and, as such, is not barred under 12 U.S.C. § 1823(e) and *Langley v. FDIC*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987). Plaintiff also contends that its claims are based on the bank's violation of implied covenants and duties which are independent of any unwritten agreement. These arguments amount to attempts to relitigate the issues that the Court has already decided and which constitute the law of the case, despite the Court's instruction to avoid this tactic. The Court could dismiss these arguments out of hand. Giving the plaintiff the benefit of the doubt, and construing these issues on the merits, the Court sees no reason it should reconsider or depart from its prior holding with respect to the remaining claims.

Plaintiff argues that the bank, Baltimore Federal Financial, F.S.A. ("BFF"), engaged in conduct so egregious that it rises above the level of fraud in the inducement and constitutes fraud in the factum. The Supreme Court in *Langley* suggested that a defense (or claim) of fraud in the factum might not be barred under § 1823(e) because such a defense renders the instrument entirely void, whereas fraud in the inducement only renders the instrument voidable. *Langley*, 484 U.S. at 93, 108 S.Ct. at 402. As the Court noted in its prior decision, fraud in the factum "is the sort of fraud that procures a party's signature to an instrument without knowledge of its true nature or contents". *Langley*,

---

**1.** A number of different cases were consolidated into this action. The Motion for Summary Judgment at issue here involves only the claims set forth in the Complaint in the original Civil Action No. 90–3002, and does not concern the later consolidated cases.

**2.** *See D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942).

**3.** Plaintiff also responded to other arguments raised by defendant in its Motion for Summary Judgment. Because the Court found the RTC's arguments regarding 12 U.S.C. § 1823(e) and *D'Oench, Duhme* dispositive, it did not reach these arguments in its prior decision and need not reach them now.

484 U.S. at 93, 108 S.Ct. at 402. (citations omitted). The plaintiff does not allege that the wrong documents were signed or that it did not understand the contents thereof. In fact, it is undisputed that the plaintiff was represented by counsel in the negotiation of terms of the loan and at the loan closing and was fully aware of the contents of the Construction Loan Agreement, Deed of Trust and Deed of Trust Note. *See* Def.'s Statement of Facts Not in Dispute ¶ 9; Pl.s Statement of Genuine Issues in Dispute ¶ 1. While the plaintiff now suggests that fraud in the factum exists here because of the allegedly egregious nature of the alleged fraud, it presents no authority for the proposition that the extremity of the allegations converts a claim for fraud in the inducement into fraud in the factum, and this Court finds none. *See* Pl.Supp. Opp. at 19–20. Therefore there is no basis for a claim of fraud in the factum here that would prevent the application of § 1823(e) as to the remaining claims.

Plaintiff also contends that its claims are based on the BFF''s violation of implied covenants and duties which are independent of any unwritten agreement, and therefore beyond the scope of § 1823(e) and *D'Oench, Duhme.* This Court addressed this argument, at least in part, in its prior Memorandum Opinion, where it found that a claim of the breach of the implied covenant of good faith and fair dealing is not barred by § 1823(e). Mem. Op. at 546–47. While the plaintiff has now presented cases to further support its position, none of these cases are directly on point; moreover, none are binding on this Court. *See Texas Refrigeration Supply, Inc. v. FDIC*, 953 F.2d 975, 980–983 (5th Cir.1992) (involving claim of wrongful acceleration and unreasonable sale at foreclosure); *Garrett v. Commonwealth Mtge. Corp.*, 938 F.2d 591, 594–95 (5th Cir.1991) (finding dismissal under *D'Oench, Duhme* and § 1823(e) premature on a motion to dismiss); *Tuxedo Beach Club Corp. v. City Federal Savings Bank*, 749 F.Supp. 635, 642–43 (D.N.J.1990) (finding dismissal under *D'Oench, Duhme* and § 1823(e) premature when there has not been an opportunity for discovery on whether an enforceable "agreement" exists); *American Fed'n of State, County and Municipal Employees v. FDIC*, Slip op, MF No. 90–1755 (March 11, 1992), at 49–50 (rejecting argument that § 1823(e) does not apply to alleged misrepresentations and omissions independent of an agreement).

Thus the Court finds that the plaintiff's remaining claims are barred under 12 U.S.C. § 1823(e) and the *D'Oench, Duhme* doctrine. The plaintiff has demonstrated no reason that the Court's holding with respect to the rescission claim in this case should not apply to the other claims contained in the Complaint.

Accordingly, it is, by the Court, this 26 day of June, 1992,

ORDERED that for the reasons stated herein and those set forth in the Court's Memorandum Opinion filed May 1, 1992, the defendant's Motion for Summary Judgment shall be, and hereby is, GRANTED with respect to the remaining counts of the Complaint (Counts I, II, III, and V) in the original Civil Action No. 90–3002; and it is

FURTHER ORDERED that the original Civil Action No. 90–3002 shall be, and hereby is, DISMISSED from the dockets of this Court; and it is

FURTHER ORDERED that this Order shall have no effect on the status of the other causes of action which were subsequently consolidated into Civil Action No. 90–3002.