Edward M. and Thelma McGLOTHLIN,
Plaintiffs,

v.

RESOLUTION TRUST CORPORATION,
as Receiver for Vista Federal Savings
Bank, et al., Defendants.

Civil Action No. 94–555 SSH.

United States District Court,
District of Columbia.

Jan. 19, 1996.

Edward M. McGlothlin and Thelma R. McGlothlin, Dumfries, VA, pro se.

Janet K. DeCosta, Washington, DC, for Defendants.

R. Grant Decker, McLean, VA, for Resolution Trust Corp.

## OPINION

STANLEY S. HARRIS, District Judge.

Before the Court are defendant Resolution Trust Corporation's ("RTC's") motion to dismiss or, in the alternative, for summary judgment, plaintiffs' opposition, and defendant's reply. Also before the Court is defendant Mary Lenser's unopposed motion to dismiss. Upon consideration, defendant RTC's motion for summary judgment is granted. In addition, defendant Lenser's motion to dismiss is granted. Although findings of fact and conclusions of law are unnec-

essary in ruling on a motion to dismiss or for summary judgment, *see* Fed.R.Civ.P. 52(a), the Court briefly sets forth its reasoning.

*Background*

Plaintiffs Edward and Thelma McGlothlin are the parents of Jeffery S. McGlothlin, a principal in McGlothlin/Mingione Homes ("MM Homes"), which is a Virginia general partnership engaged in the land development and home construction business. In 1989, MM Homes contacted institutional lenders for purchase and construction monies to acquire and develop property in Fairfax County, Virginia. Plaintiffs contributed $209,000 toward the $1,850,000 purchase price of property in Fairfax County known as Berrywood Estates, and plaintiffs were named as co-owners of the property on the deed of trust.

Vista Federal Savings Bank ("Vista") issued a Commitment Letter on July 7, 1989, agreeing to provide a loan to MM Homes for the acquisition of Berrywood Estates, for the construction of homes on the property, and for additional expenses, to a maximum of $2,500,000, under a revolving line of credit. On July 28, 1989, MM Homes and Vista executed a construction Loan Agreement. (Plaintiffs were not mentioned as obligors on the MM Homes loan in the Commitment Letter or the Loan Agreement.) Plaintiffs allege in their complaint that at the loan closing, Vista, through its attorney, David Hannah, represented to an unnamed representative of MM Homes that plaintiffs were obligated by law to sign the promissory note evidencing the loan, and that Vista would not close the loan unless plaintiffs executed the promissory note.[1] Plaintiffs thereafter signed the promissory note on the loan; they contend that they would not have done so absent Hannah's representations.

Plaintiffs further allege that after they had executed the note and after the closing had been completed, Hannah stated to an unnamed representative of MM Homes that it was not in fact necessary for plaintiffs to sign the promissory note on the MM Homes loan, and that Hannah had just "[thrown] out the representation to see [if he] could get additional obligors on the promissory note...." Complaint at 7. Thereafter, plaintiffs refused to sign any other loan documents and did not sign any later amendments, loan extensions, or other modifications to the loan agreement for the term of the loan.

Plaintiffs allege that Vista imposed demands on MM Homes for additional security because it was functionally insolvent as a lending institution; that Vista demanded that its obligation to set aside money to fulfill a Fairfax County bond requirement be extinguished; and that Vista, through various actions, hindered MM Homes from obtaining construction permits from Fairfax County, which eventually caused the failure of the Berrywood Estates construction project. Vista foreclosed upon the MM Homes loan and, according to plaintiffs, wrongfully "compelled ... confession of ... judgment against the M/M Homes guarantors...."[2]

Plaintiffs filed their three-count complaint against defendants the RTC, Mary Lenser, and Gerald Chapman on March 17, 1994. Plaintiffs allege that defendants fraudulently induced them into signing the promissory note on the MM Homes loan (Count I); that defendants breached their contract with MM Homes by a series of acts and omissions that plaintiffs allege eventually caused the failure of the Berrywood Estates project (Count II); and that defendants were negligent because defendants, *inter alia*, failed to properly review the MM Homes loan application and failed to maintain federally mandated solvency levels (Count III). Plaintiffs request $3,000,000 in "actual damages" and $350,000 against each defendant in punitive damages. Defendant RTC filed a motion to dismiss or for summary judgment; defendant Lenser filed a motion to dismiss.

---

1. Plaintiffs were not at the closing. *See* Defendant's Motion To Dismiss, Ex. 1, at 3 (plaintiffs' suit in Fairfax Circuit Court against Vista and other parties).

2. According to defendant Lenser's affidavit, appended as Exhibit 1 to defendant RTC's Statement of Material Facts Not At Issue, Vista obtained a judgment by confession against MM Homes and plaintiffs on September 9, 1991. However, that judgment was vacated on Vista's motion, by Order entered September 26, 1991. *See* Defendant's Statement of Material Facts Not At Issue, Ex. 1, Ex. G.

The Court finds that plaintiffs' claim of fraudulent representation is barred by the statutory requirements of 12 U.S.C. § 1823(e). In addition, because plaintiffs did not submit their other two claims to the RTC prior to filing suit in this Court as required by 12 U.S.C. § 1821(d), the Court has no subject matter jurisdiction over plaintiffs' claims of breach of contract and negligence, and those counts must be dismissed with prejudice. Finally, since plaintiffs did not oppose defendant Lenser's motion to dismiss, her motion to dismiss is granted as well.

*Discussion*

*The RTC's Summary Judgment Motion*

A court may grant summary judgment when the pleadings and supplemental materials present no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 321–22, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In considering a summary judgment motion, all evidence and the inferences to be drawn from it must be considered in a light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Summary judgment cannot be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The Court finds that defendant is entitled to summary judgment on all counts of plaintiff's complaint.

**I. Fraudulent Inducement and § 1823(e).**

▮ Plaintiffs' claim against the RTC for fraudulent inducement is barred as a matter of law by 12 U.S.C. § 1823(e) (1989 & Supp. 1995). 12 U.S.C. 1823(e) codified the common-law proposition, commonly known as the *D'Oench, Duhme* doctrine, that oral side agreements between a borrower party and a failed bank are not enforceable against the Federal Deposit Insurance Corporation (FDIC) or the RTC as receiver for the failed bank. *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 460, 62 S.Ct. 676, 680, 86 L.Ed. 956 (1942); *Washington Properties, L.P. v. RTC*, 796 F.Supp. 542, 545 (D.D.C.1992).[3] 12 U.S.C. § 1823(e) provides that a party may not assert a claim or defense against the FDIC or RTC based on an agreement or condition not recorded in the records of the financial institution for which the FDIC or RTC has been appointed as a receiver.[4] *See Langley v. FDIC*, 484 U.S. 86, 92–93, 108 S.Ct. 396, 401–02, 98 L.Ed.2d 340 (1987).

In *Washington Properties v. RTC*, this court held that a claim for fraud in the inducement against the RTC as receiver for a failed bank was barred by 12 U.S.C. § 1823(e) 796 F.Supp. 542, 545 (D.D.C.1992). In *Washington Properties*, the plaintiff, an owner of real property on which a building stood, joined with the building owners in executing a Deed of Trust with Baltimore Federal Financial ("Bank") to secure a construction loan agreement. *Id.* at 543. The Deed of Trust subordinated plaintiff's rights to those of the Bank and gave the Bank the right to foreclose on plaintiff's fee simple

**3.** In *Murphy v. FDIC*, 61 F.3d 34 (D.C.Cir.1995), the United States Court of Appeals for the District of Columbia Circuit held that the decision of the Supreme Court in *O'Melveny & Myers v. FDIC*, — U.S. —, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994), removed the common law *D'Oench, Duhme* doctrine as a separate bar to claims against the FDIC by persons with unrecorded claims against a failed bank.

**4.** Section 1823(e) provides:

No agreement which tends to diminish or defeat the interest of the [Federal Deposit Insurance] Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the [FDIC] unless such agreement—

(A) is in writing,

(B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

(C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

(D) has been, continuously, from the time of its execution, an official record of the depository institution.

This statute is specifically made applicable to the RTC in 12 U.S.C. § 1441a(b)(4)(A) (Supp.1995).

interest in the property, in the event the building owners defaulted on the deed of trust. *Id.* The building owners did indeed default on the debt and filed for bankruptcy shortly thereafter. Plaintiff filed suit attacking the deed of trust, claiming, *inter alia,* that the Bank had misrepresented to the plaintiff its ability to administer the loan and the concomitant Deed of Trust and that the Bank had imperfectly performed its obligations under the terms of the construction loan. *Id.* at 544. When the plaintiff filed suit, the RTC had stepped in as receiver for the failed Bank. *Id.* at 543.

The district court in *Washington Properties* relied squarely on the Supreme Court's recent opinion in *Langley v. FDIC,* 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987), in holding that a claim of fraudulent inducement is barred by § 1823(e). In *Langley,* a unanimous Supreme Court held that, in an action for payment of a note brought by the FDIC in its corporate capacity, § 1823(e) barred a defense that the note was procured by fraud in the inducement. 484 U.S. at 403 (holding that "[a] condition to payment of a note ... is part of the "agreement" to which the writing, approval, and filing requirements of 12 U.S.C. § 1823(e) attach"). The court in *Washington Properties* followed suit, holding that "[t]he fact that a party claims that a representation was fraudulent and fraudulently induced them to secure a bank loan does not defeat the application of § 1823(e)." 796 F.Supp. at 545.

This case presents exactly the same scenario as that in *Washington Properties;* plaintiffs aver that Vista, through its attorneys, orally represented to them that their signatures on the $2.5 million promissory note were legally required, when in fact they were not, and that this oral representation caused them to sign the promissory note. Section 1823(e), *Langley,* and *Washington Properties* stand squarely against plaintiff's

claim. Defendant RTC is entitled to summary judgment as to Count I of plaintiffs' complaint.[5]

## II. Counts II and III and the RTC Claims Process

■ Plaintiffs assert in Counts II and III of their complaint claims of negligence and breach of contract against the RTC and the individual defendants. Plaintiffs did not submit these claims to the RTC administrative claims process, as they are required to do before this Court may exercise jurisdiction over them. 12 U.S.C. § 1821(d)(5) sets out procedures for RTC determination of claims; § 1821(d)(6) allows for judicial review of disallowed claims; and § 1821(d)(13)(D) restricts judicial review of claims against the RTC to those claims which have previously been submitted to the RTC administrative review process. *See also Coleman v. FDIC,* 826 F.Supp. 31 (D.Mass.1993) (no court may exercise jurisdiction over any claim against the FDIC as receiver unless the claimant has first submitted its claim to the FDIC administrative claims process). Plaintiffs submitted a claim to the RTC in June 1992 for damages of $250,000, claiming fraudulent inducement;[6] plaintiffs have not submitted any claims to the RTC based on negligence or breach of contract, nor have they submitted claims for the amount of damages they seek in this Court.

Plaintiffs state in their opposition to defendant RTC's summary judgment motion that other parties associated with the failed Berrywood Estates project have filed claims against the RTC for negligence and breach of contract, and that it was a mere oversight that plaintiffs were not included as claimants in the parties' submission to the RTC claims process under those claims. Plaintiffs' Opp. at 4. Whether this is or is not the case, the fact remains that plaintiffs were never joined

---

**5.** The decision of the District of Columbia Circuit in *Murphy v. FDIC* docs not change this result. In addition to holding that, after *O'Melveny & Myers,* the *D'Oench, Duhme* doctrine could not be used as a separate bar to claims against the FDIC, the court of appeals held in *Murphy* that § 1823(e) docs not bar claims against the FDIC unless the FDIC can show that its interest in a "specific asset"—*i.e.,* a loan—would be diminish-

ed if the claim were allowed. *Murphy,* 61 F.3d at 37–38. Here, the FDIC's interest lies in a specific asset, namely, the MM Homes loan, and its interest would be substantially diminished if plaintiffs' claims against the FDIC were allowed.

**6.** *See* Defendant's Motion for Summary Judgment, Ex. B.

as claimants on the other parties' negligence and breach of contract claims submitted to the RTC, and this Court cannot treat plaintiffs as if their claims were somehow grafted onto the third-party submissions to the RTC claims process. Plaintiffs themselves should have submitted their claims of negligence and breach of contract, and their considerably enhanced damages claims, to the RTC prior to filing suit in this Court. Since the deadline for filing with the RTC proof of claims against Vista has long since passed,[7] RTC's motion for summary judgment as to Counts II and III must be granted as well.

*Defendant Lenser's Motion To Dismiss*

■ Defendant Mary Lenser has moved to dismiss plaintiffs' complaint on two grounds: first, that she was never served with a summons as required by Fed.R.Civ.P. 4(c)(1), and second, that this Court lacks personal jurisdiction over her. Plaintiffs have failed to respond to defendant Lenser's motion to dismiss. Therefore, the Court treats defendant Lenser's motion as conceded and grants her motion to dismiss.

*Defendant Chapman*

■ Remaining is defendant Gerald Chapman. Chapman was named as a defendant in plaintiffs' complaint, but no evidence exists that Chapman was ever served with a copy of the summons and complaint within the 120 days of the filing of plaintiffs' complaint, as required by Fed.R.Civ.P. 4(m). Accordingly, unless plaintiffs provide the Court with proof of timely service within 21 days of the date of this Opinion, the Court will dismiss plaintiffs' action against defendant Chapman.

*Plaintiffs' Motion for Alternative Dispute Resolution*

Plaintiffs filed a motion requesting the Court to assign this action to the court's alternative dispute resolution process. Be-

cause this Opinion resolves most, if not all, of this case, plaintiffs' motion is denied as moot.

---

7. *See* Defendant's Motion To Dismiss or for Summary Judgment, Ex. B to Rodriguez Affidavit (notice to Vista creditors stating that "all claims must be filed by June 29, 1992, or the claim will be disallowed"). Plaintiffs admit they had notice of this deadline, although they contend they were given "very little notice." Plaintiffs' Opp. at 5.