**Edward J. MORRIS, Plaintiff,**

v.

**Harry J. AZZI, Florence J. Azzi, the Resolution Trust Corporation in its Capacity as Conservator of Carteret Federal Savings Bank, the Resolution Trust Corporation in its Capacity as Receiver of Carteret Savings Bank, F.A., and Federal Home Loan Mortgage Corp., Defendants.**

**INDEPENDENCE ONE MORTGAGE CORPORATION,**

v.

**Harry J. AZZI, Florence L. Azzi, et al.**

**Civ. A. No. 93–1625(JBS).**

United States District Court,
D. New Jersey.

Oct. 5, 1994.

Edward J. Morris, pro se.

Arthur Meisel, Jamieson, Moore, Peskin & Spicer, Princeton, NJ, and Charles W. Dortch, Jr., Sumners, Council, George & Dortch, Trenton, NJ, for defendants.

## OPINION

SIMANDLE, District Judge:

This matter comes before the court upon the motion of defendants, Resolution Trust Corporation as Conservator of Carteret Federal Savings Bank and as Receiver of Carteret Savings Bank, F.A., and Federal Home Loan Mortgage Corporation (FHLMC) to dismiss plaintiff's complaint for failure to state a claim upon which relief may be granted. In light of the fact that discovery is ongoing, the motion will be treated strictly as one brought under Rule 12(b)(6), Fed.R.Civ. P., and not as one for summary judgment, although the parties append certain extraneous documents to their papers.

The motion presents two legal issues. First, under what circumstances may a first mortgagee be held liable to a second mortgagee for failing to conserve the second mortgagee's equity interest in the property under New Jersey law? Second, is the assertion of a cause of action against a financial institution taken over by the Resolution Trust Corporation for breach of the implied covenant of good faith and fair dealing in the performance of obligations under a Postponement of Mortgage barred as a matter of law under the *D'Oench, Duhme* doctrine or 12 U.S.C. § 1823(e)?

## Discussion

Plaintiff's complaint alleges that on November 12, 1987, Harry J. Azzi and Florence L. Azzi executed and delivered to plaintiff a mortgage note to secure the sum of $50,000, payable on December 1, 1988. There was also a mortgage in the sum of $202,500.00 on the property in favor of defendant Carteret Savings Bank, which was recorded on November 27, 1989. The Azzis defaulted on their payments to plaintiff, and plaintiff accordingly filed a complaint, styled "Com-

plaint in Foreclosure," in the Superior Court, Chancery Division, Atlantic County. Count 1 of the complaint; later removed by defendant Resolution Trust Corporation (RTC)[1] to the federal district court, seeks an Order directing plaintiff to be paid the amount due under the note, prays for the appointment of a rent receiver, and seeks a sale of the property in order to satisfy the amount due plaintiff. Count 2 of the complaint seeks possession of the property, as well as damages.

The critical portions of the complaint for present purposes appear at Counts 3 and 4. Count 3 sets forth that on November 10, 1989, plaintiff executed, at the request of defendant Carteret Savings Bank, a "Postponement of Mortgage" in the amount of $50,000. Cmplt., Count 3, ¶ 4. The Carteret mortgage is alleged to have been transferred to defendant FHLMC on that same date. *Id.* ¶ 5. Carteret, however, is alleged to have maintained its right to service the mortgage transferred to FHLMC in exchange for receipt of a monthly servicing fee. *Id.* ¶ 6. Plaintiff received, as a consequence of the November 10, 1989 activities, payment of $4,925.00 to satisfy the principal balance due on a *separate* note executed in his favor by the Azzis. Plaintiff alleges that this sum did not represent consideration for the execution of the Postponement of Mortgage document he executed. *Id.* ¶ 8. The Postponement of Mortgage document recites that plaintiff received the sum of $1.00 as consideration for making the Postponement, but plaintiff states that he never received that sum. *Id.* ¶ 10. In addition, the complaint alleges that plaintiff "bargained for and relied on the expectation that Carteret would exercise prudent investment care in the servicing of the Azzi loan and would comply with applicable federal statutes, rules, regulations, bulletins and guides governing purchase contracts by and between the Federal Home Loan Mortgage Corporation and its servicing financial institutions such as Carteret." *Id.* ¶ 11.

On October 11, 1990, the Azzis filed a petition for bankruptcy under Chapter 13, and later Chapter 7, of the United States Bankruptcy Code. Plaintiff avers that from

---

1. On December 4, 1992, the RTC took over Carteret, a failed savings and loan institution.

on or about October 1, 1990, defendant Carteret failed to utilize appropriate collection techniques; failed to cooperate with plaintiff, who made attempts to dispose of the property; failed to take reasonable steps to prevent an accumulation of interest due on the Carteret mortgage, thereby jeopardizing the equity value of the mortgaged premises; and generally permitted the mortgage principle and interest payments to accumulate to the point where no equity or proceeds would be available to plaintiff, all as a result of negligence. The complaint further alleges that defendant Carteret's conduct in failing to use prudent care in the servicing of the Azzi mortgage in contravention of rules and regulations established by the FHLMC "and impliedly bargained for as consideration for execution of the Postponement of Mortgage dated November 10, 1989" has resulted in damages to plaintiff. It is plaintiff's contention, moreover, that defendant Carteret is "guilty of laches and as a result of its conduct ... should be estopped from asserting any claim against the mortgaged premises ... and the lien of Carteret should be subordinated to the mortgage note and mortgage of plaintiff." *Id.* ¶ 26. He therefore seeks all amounts due on the note plus interest, equitable relief in the form of a cancellation of the Postponement of Mortgage, and equitable subordination of the Carteret Mortgage to plaintiff's mortgage.

In Count 4 of the amended complaint [2], plaintiff alleges that, in light of the Postponement of Mortgage, defendant Carteret had a duty, obligation and responsibility to act reasonably and in good faith in order to protect and conserve the equity and position of plaintiff as second mortgagee. In addition, plaintiff states that defendant's failure to proceed timely with a default against the Azzis was intentional, and was part of a scheme not to foreclose on mortgages it held throughout the state of New Jersey in order to allow an accumulation of interest and penalties on the mortgaged properties; plaintiff alleges that such strategy inhered to the financial benefit of defendant Carteret when Carteret subsequently sold the mortgage loans to other financial institutions, maintaining servicing rights as part of the transactions. Amended Cmplt., Count 4 ¶¶ 3–6. Plaintiff alleges that defendant's actions in permitting the default to continue to the point where the amount due defendants would equal or exceed the fair market value or appraised value of the property were unfair business practices which operated to deprive plaintiff of equity in the Azzi residence. *Id.* ¶ 8.

### A. Defendants' Motion to Dismiss on Ground that They Owe No Duty to Plaintiff of Cautious Loan Administration

A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). A district court must accept as true the facts pleaded in the complaint and any and all reasonable inferences which may be derived from those facts. *Unger v. National Residents Matching Program,* 928 F.2d 1392, 1400 (3d Cir.1991); *Glenside West Corp. v. Exxon Co., U.S.A.,* 761 F.Supp. 1100, 1107 (D.N.J.1991); *Gutman v. Howard Sav. Bank,* 748 F.Supp. 254, 260 (D.N.J.1990).

■ It is not necessary for the plaintiff to plead evidence, and it is not necessary to plead the facts that serve as the basis for the claim. *Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 446 (3d Cir.1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978); *In re Midlantic Corp. Shareholder Litigation,* 758 F.Supp. 226, 230 (D.N.J.1990). The question before the court is not whether the plaintiff will ultimately prevail; rather, it is whether he can prove any set of facts in support of his claims that would entitle him to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984).

---

2. Upon defendants' motion for reconsideration of a portion of the court's decision and Order dated December 30, 1993, the court permitted defendants to file an answer to the amended complaint. *See* Order dated August 23, 1994.

Relying on a single case decided under the law of Illinois, defendants argue that because the Postponement of Mortgage executed by plaintiff was unconditional on its face, defendants owe no duty to plaintiff as second mortgagee, and thus the complaint fails to state a claim for which relief may be granted: "In the ordinary course, a first mortgagee not in possession has no duty to protect and conserve the equity and position of a second mortgage holder." Def.Br. at 6.

The quoted statement accurately reflects New Jersey law. Only if a mortgagee is one in possession will the mortgagee owe a duty to a second mortgagee to account in a foreclosure action. *See Shadow Lawn Sav. & Loan Assoc. v. Palmarozza*, 190 N.J.Super. 314, 319, 463 A.2d 384 (App.Div.1983) (citing *South Amboy Trust Co. v. McMichael Holdings, Inc.*, 141 N.J.Eq. 12, 14, 56 A.2d 437 (Ch. 1947)); *McCorristin v. Salmon Signs*, 244 N.J.Super. 503, 509, 582 A.2d 1271 (App.Div.1990) ("Once a mortgagee gains possession the mortgagee assumes the responsibility for the management and preservation of the property.") (citing *Essex Cleaning v. Amato*, 127 N.J.Super. 364, 366, 317 A.2d 411 (App.Div.), *certif. denied*, 65 N.J. 575, 325 A.2d 709 (1974)).

It is not the case, then, that there is no set of facts which would support plaintiff's claim. As defendants' brief acknowledges, defendant Carteret could be held liable to plaintiff if it were deemed a mortgagee in possession. Plaintiff urges the court not to dismiss his complaint before he is given an opportunity to discover facts in support of such a theory, and cites the court to evidence already in his possession showing that defendant Carteret had keys to the premises and had certain repair work performed after the Azzis abandoned the property. Although defendants dispute that they were mortgagees in possession by including a sentence in their "Statement of Undisputed Material Facts" that they were never in possession of the property, this statement is actually contested by plaintiff and is not properly considered on a motion to dismiss.[3] The complaint will not be dismissed at this stage; plaintiff was not required to "plead evidence," and there exists a set of facts which could support the claim subject to attack on the present motion. If discovery yields evidence that defendant Carteret was not a mortgagee in possession, it would then be appropriate for defendants to move for summary judgment on such grounds.[4] We are not yet appropriately at the summary judgment stage, however, and defendants' motion to dismiss based upon the lack of a duty of cautious loan administration will be denied.

**B. RTC's Motion to Dismiss Under D'Oench, Duhme Doctrine**

The only other ground for dismissal articulated in defendants' moving brief is defendant RTC's argument that the *D'Oench, Duhme* doctrine and 12 U.S.C. § 1823(e) bar the claims asserted against it in Count 4 of the amended complaint.[5]

3. We note, moreover, that "possession" may be either actual or constructive, and "dominion and control" is sufficient for constructive possession to be found. "Management and control are the important tests." 30 N.J.Practice § 195, p. 38 (1st ed. 1975) (citing cases).

4. Defendants press that *Home Sav. Ass'n. of Kansas City v. State Bank of Woodstock*, 763 F.Supp. 292 (N.D.Ill.1991), is dispositive of the claims against them. First, that case was decided under Illinois law. Second, the district court in that decision made a prediction that the Illinois Supreme Court would abandon its earlier approach to the issue presented, and is thus of dubious precedential value even within Illinois. Third, the language relied upon by defendants—"To impose a duty of cautious loan administration on a lender where none is expressed in the executed subordination agreement, thereby making the subordination conditional, would amount to judicial redrafting of the parties' agreement"—is pertinent only to the district court's holding that plaintiff's equitable subordination claim must be dismissed. Present plaintiff has additional claims. In any event, it is New Jersey law which controls, and under New Jersey law, a mortgagee in possession owes duties to a junior mortgagee. If plaintiff shows defendant Carteret was a mortgagee in possession, he may proceed on his claims.

5. Plaintiff advances an objection to the court's consideration of the *D'Oench, Duhme* defense on the merits, because it is not set forth in defendant's answer. The answer filed on August 19, 1994 pursuant to this court's ruling at oral argument upon defendants' motion for reconsideration on August 18, 1994 (memorialized by Order dated August 23, 1994) is simply a copy of the

■ *D'Oench, Duhme & Co., Inc. v. Federal Deposit Ins. Corp.,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956, *reh'g denied,* 315 U.S. 830, 62 S.Ct. 910, 86 L.Ed. 1224 (1942), established the federal common law doctrine "preventing borrowers from raising 'secret agreements' in defense to actions to enforce ostensibly unconditional obligations they owe to a bank that the Federal Deposit Insurance Corporation (FDIC) has taken over." *Adams v. Madison Realty & Dev., Inc.,* 937 F.2d 845, 851 (3d Cir.1991). D'Oench, Duhme was a securities brokerage house that executed promissory notes payable to a bank so that the bank would not have to show a loss on its books arising from the default of some bonds the bank had purchased. The bank gave D'Oench, Duhme a receipt for the promissory notes constituting a side agreement that the bank would not demand payment upon the notes. When the bank failed, the FDIC acquired the notes and brought a collection action against D'Oench Duhme, which asserted as a defense the side agreement under which the bank had agreed not to enforce the notes. The Supreme Court found that federal law protected the FDIC against undisclosed and fraudulent agreements not plainly appearing on the face of the obligation. *D'Oench, Duhme,* 315 U.S. at 461, 62 S.Ct. at 681. Such a side agreement assisted the bank in misleading bank-examining authorities, and D'Oench Duhme was therefore estopped from asserting such a defense against the FDIC. The Third Circuit in *Adams* has summarized the *D'Oench, Duhme* rule as stating that "no agreement between a borrower and a bank which does not plainly appear on the face of an obligation or in the bank's official records is enforceable against the FDIC [or the RTC]." *Adams,* 937 F.2d at 852.

In 1950, Congress built upon *D'Oench, Duhme* and its progeny when it enacted an amendment to the Federal Deposit Insurance Act, 64 Stat. 889, at 12 U.S.C. § 1823(e), which provided:

No agreement which tends to diminish or defeat the right, title or interest of the Corporation [FDIC] in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

That provision was "generally thought to codify the result reached in *D'Oench, Duhme,*" *Adams,* 937 F.2d at 852.

The Supreme Court was called upon to interpret the meaning of "agreement" in section 1823(e) in *Langley v. FDIC,* 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987). The Langleys were obligors upon a note which they had used to purchase real estate. They defaulted upon the note. When the bank sued to enforce, the Langleys claimed that the bank had made misrepresentations concerning the property's acreage and mineral rights. When the bank failed, the FDIC pursued the lawsuit, urging that § 1823(e) barred precisely the sort of an obligor's claim of unwritten misrepresentations that the Langley's were asserting in an effort to defeat the FDIC's interest.

The *Langley* Court unanimously found that an "agreement" under section 1823(e) includes the alleged misrepresentations by the failed bank regarding acreage and mineral rights, holding:

A condition to payment of a note, including the truth of an express warranty, is part of the "agreement" to which the writing, approval and filing requirements of 12 U.S.C.

answer which was to have been filed by defendants in the state court on December 4, 1992, which was drafted prior to the time the RTC took over Carteret. The RTC has never been given the opportunity to assert any of its affirmative defenses, and, given the unfortunate pleadings history in this case set forth in this court's Opin-

ion dated December 30, 1993, the RTC's *D'Oench, Duhme* defense is appropriately advanced by way of the present motion to dismiss. The court expressly granted permission for the filing of the present motion in an earlier Order filed August 5, 1994.

§ 1823(e) attach. Because the representations alleged by [the Langleys] constitute such a condition and did not meet the requirements of the statute, they cannot be asserted as defenses here.

*Langley,* 484 U.S. at 96, 108 S.Ct. at 403. Quite plainly, the Supreme Court's rationale in *Langley* invests section 1823(e) with a threefold purpose of protecting the FDIC from unknown aspects of loan transactions, because the Court noted:

> One purpose of § 1823(e) is to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets.... Neither the FDIC nor state banking authorities would be able to make reliable evaluations if bank records contained seemingly unqualified notes that are in fact subject to undisclosed conditions.

> A second purpose of § 1823(e) is implicit in the requirement that the "agreement" not merely be on file in the bank's records at the time of an examination, but also have been executed and become a bank record "contemporaneously" with the making of the note and have been approved by officially recorded action of the bank's board or loan committee. These latter requirements ensure mature consideration of unusual loan transactions by senior bank officials, and prevent fraudulent insertion of new terms, with the collusion of bank employees, when a bank appears headed for failure....

> ... We can safely assume that Congress did not mean "agreement" in § 1823(e) to be interpreted so much more narrowly than its permissible meaning as to disserve the principles of the leading case [*D'Oench, Duhme* ] applying that term to FDIC-acquired notes. Certainly, one who signs a facially unqualified note subject to an unwritten and unrecorded condition upon its repayment has lent himself to a scheme or arrangement that is likely to mislead the banking authorities, whether the condition consists of performance of a counterpromise (as in *D'Oench, Duhme* ) or of the truthfulness of a warranted fact.

*Langley,* 484 U.S. at 84–85, 108 S.Ct. at 391.

Subsequent to *Langley,* Congress amended section 1823(e) to enlarge the reach of that section to assets acquired by the FDIC or RTC in both its corporate or receiver capacities under both sections 1823 and 1821. *Adams,* 937 F.2d at 854. Thus, as presently written, section 1823(e) states:

> No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or under section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement—
>
> (1) is in writing,
> (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution;
> (3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
> (4) has been, continuously from the time of its execution, an official record of the depository institution.

*Id.*

In Count 4 of the amended complaint, no issue is raised regarding the making of some "secret" agreement between plaintiff and defendant Carteret which is being asserted to defeat the RTC's claim to an asset. Rather, plaintiff asserts that defendant Carteret failed to act as a prudent mortgage servicer, and as such caused damage to plaintiff's secondary interest in the property. The duty allegedly breached allegedly arises under state law (duty of good faith and fair dealing), and not as a consequence of an oral or other side understanding between the failed thrift and plaintiff. The policy reasons behind *D'Oench, Duhme* and 12 U.S.C. § 1823(e)—ensuring that examiners will be able to make reliable evaluations of bank records, ensuring mature consideration of unusual loan transactions by senior bank officials, preventing collusion, and ensuring that banking authorities will not be misled, *see Langley*—cannot logically be applied to bar assertion of such claims; "neither section 1823(e) nor the *D'Oench, Duhme* doctrine prevents plaintiff[ ] from asserting claims or defenses that do not depend on agreements."

*Garrett v. Commonwealth Mortgage Corp.,* 938 F.2d 591, 595 (5th Cir.1991). *See Fox & Lazo–Atlantic Commercial Group, Inc. v. Resolution Trust Corporation,* 862 F.Supp. 1233 (D.N.J.1994) ("Section 1823(e) and *D'Oench, Duhme* were designed to prevent borrowers from alleging unrecorded or otherwise irregular agreements to nullify the effect of written agreements pertaining to assets acquired by the RTC ...").

In *Texas Refrigeration Supply, Inc. v. FDIC,* 953 F.2d 975 (5th Cir.1992), the Fifth Circuit held that *D'Oench, Duhme* did not preclude a borrower from asserting claims for wrongful acceleration and unreasonable disposal of collateral at foreclosure. Because the claims did not arise from a secret or unrecorded agreement but rather arose from the implied good faith obligation part of every contract under state law, the claims would be apparent to the bank examiners considering the failed thrift's documents in light of relevant law; *D'Oench, Duhme* and § 1823(e) were, accordingly, held inapposite. *See also New Bank of New England, N.A. v. Callahan,* 798 F.Supp. 73, 77 (D.N.H.1992) (legal obligations arising from state law rather than purported agreements between parties do not rely upon "agreements" within the meaning of *D'Oench* or § 1823(e)); *In re Beitzell,* 163 B.R. 637 (Bankr.D.D.C.1993) (holding *D'Oench, Duhme* does not bar state law claim based on breach of an implied covenant of good faith and fair dealing).[6] *But see F.D.I.C. v. Smith,* 848 F.Supp. 1053, 1059 (D.Mass.1994).[7]

Defendants provide the court with no case citations to the contrary. The RTC's motion to dismiss the claims asserted against it in Count 4 of the amended complaint will, accordingly, be denied.

### Conclusion

For the reasons stated above, the court will deny defendants' motion to dismiss plaintiff's complaint.

---

**6.** *Federal Deposit Ins. Corp. v. Giammettei,* 34 F.3d 51 (2d Cir.1994), is not to the contrary. That case distinguishes *Beitzell,* among others, on the ground that that case did not involve allegations of breach of the duty of good faith and fair dealing in the *inducement* of the execution of the notes at issue, but rather dealt with allegations of the implied covenant of good faith and fair dealing in the *performance* of obligations under the note at issue. *Id.,* 34 F.3d at 56. Unlike the complaint in *Giammettei,* to the extent the present complaint alleges a breach of the covenant of good faith and fair dealing in Count 4, it relies upon an alleged lack of good faith in performance of the Postponement of Mortgage; plaintiff does not rely on allegations that he was misled into executing the agreement, but rather that the duties implicit in the agreement under

state law and upon which he, accordingly, relied in executing the agreement were breached by virtue of defendant Carteret's subsequent allegedly irresponsible actions with regard to the property.

**7.** *Smith* cites to *F.D.I.C. v. Rusconi,* 808 F.Supp. 30, 43 (D.Me.1992), which held claim for breach of implied covenant of good faith and fair dealing barred by *D'Oench, Duhme where that claim was predicated upon an oral understanding.* Absent such dependence upon an oral understanding, there is no justification consistent with the purposes underlying the statute to read the state law obligation of good faith and understanding to constitute an "agreement" under § 1823(e).