# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## CA 19-47

**FIDELITY BANK**

**VERSUS**

**LLOYD VAUGHN**

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 253,861-B
HONORABLE MONIQUE F. RAULS, DISTRICT JUDGE

**********

## ELIZABETH A. PICKETT
## JUDGE

**********

Court composed of Elizabeth A. Pickett, Billy Howard Ezell, and D. Kent Savoie, Judges.

**REVERSED AND REMANDED.**

Richard A. Rozanski
Wheelis & Rozanski
2312 South MacArthur Drive
Alexandria, La 71315
(318) 445-5600
COUNSEL FOR DEFENDANT/APPELLANT:
    Lloyd Vaughn

**Barbara Bell Melton**
**Faircloth Melton, LLC**
**105 Yorktown Drive**
**Alexandria, LA 71303**
**(318) 619-7755**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
     **Fidelity Bank**

**PICKETT, Judge.**

A personal surety appeals the trial court's judgment granting summary judgment against him in favor of the holder of two promissory notes for which he guaranteed payment. As discussed below, the trial court's judgment is reversed, and the matter is remanded to the trial court.

## FACTS

In 2013, Lloyd Vaughn entered into a business venture for the development of a residential development in Fort Mitchell, Alabama. Mr. Vaughn signed a personal guaranty guaranteeing the debt of Westgate Homes, L.L.C., which consisted of two promissory notes, with The Bank of Georgia (The Bank). Westgate defaulted on the promissory notes and filed for bankruptcy. In 2015, The Bank sued Mr. Vaughn to collect the balance Westgate owed on the notes.

In October 2015, The Bank entered into receivership with the Federal Deposit Insurance Corporation (FDIC). Pursuant to a purchase and assumption agreement with the FDIC, Fidelity Bank acquired the assets of The Bank, including enforcement rights of promissory notes payable to The Bank. The trial court granted leave for Fidelity Bank to be substituted as plaintiff in place of The Bank.

Thereafter, Fidelity Bank filed two motions for summary judgment. One motion sought judgment against Mr. Vaughn as guarantor of Westgate's debt. The second motion sought dismissal of reconventional demands Mr. Vaughn asserted in his answer to the petition. The trial court denied both motions after hearings held in July 2016, finding that the parties had not had adequate time to conduct discovery.

In May 2017, Fidelity Bank substituted its counsel, and the new counsel filed a peremptory exception of no cause of action to have Mr. Vaughn's reconventional demands dismissed. The trial court sustained the exception, and Mr. Vaughn did not appeal the judgment dismissing those demands.

In April 2018, Fidelity Bank filed another motion for summary judgment to enforce Mr. Vaughn's guaranty of Westgate's debt. After a hearing, the trial court granted the motion and signed a judgment granting judgment in favor of Fidelity Bank in the principal amount of $373,207.92, together with legal interest, late fees, attorney fees, and judicial interest. Mr. Vaughn filed a motion for new trial, which was denied; he then filed a motion for appeal.

## ASSIGNMENT OF ERROR

Mr. Vaughn's sole assignment of error states:

> The [t]rial [c]ourt erred in granting Fidelity Bank's [m]otion for [s]ummary [j]udgment where genuine issues of material fact existed as to whether Lloyd Vaughn's Guaranty was extinguished by breach by The Bank . . . (and Fidelity Bank as the assignee of the FDIC) of its contractual obligation of good faith and fair dealing and impairment of collateral securing the Westgate Homes, L.L.C. loan

## DISCUSSION

### *Jurisdiction*

Fidelity Bank asserts that this court does not have jurisdiction to consider Mr. Vaughn's assigned error because Mr. Vaughn designated the judgment denying his motion for a new trial by title and date as the judgment being appealed in his motion for appeal. Contrary to that designation, Mr. Vaughn addresses only the trial court's judgment granting Fidelity Bank's motion for summary judgment in his assignment of error and his arguments to this court.

2

We addressed this issue in *Babineaux v. University Medical Center*, 15-292, p. 5 (La.App. 3 Cir. 11/4/15), 177 So.3d 1120, 1123, explaining:

> [W]hen the pleadings and briefs on appeal indicate that an appellant actually *intended* to appeal from a final judgment on the merits, the appeal could be maintained as being taken from the judgment on the merits. *See Garrett v. City of Lake Charles,* 499 So.2d 956 (La.App. 3 Cir.1986) (appeal dismissed where the intent was to appeal the dated judgment denying the plaintiff's motion for a new trial).

*See also Fuqua v. Gulf Ins. Co.*, 525 So.2d 190 (La.App. 3 Cir. 1988).

Fidelity Bank argues that *McClure v. City of Pineville*, 05-1460 (La.App. 3 Cir. 12/6/06), 944 So.2d 805, *writ denied*, 07-43 (La. 3/9/07), 949 So.2d 446, requires that we dismiss Mr. Vaughn's appeal. In *McClure*, the appellant designated the judgment on his motion for new trial by date and title as the judgment being appealed, and its actions did not evidence that it misstated the judgment it was appealing. Mr. Vaughn's arguments clearly evidence his intent to appeal the judgment granting summary judgment. *McClure* has no application here.

***Summary Judgment***

Appellate courts review summary judgments de novo, using the same criteria as the trial court. *Gray v. Am. Nat'l Prop. & Cas. Co.*, 07-1670 (La. 2/26/08), 977 So.2d 839. To succeed on a motion for summary judgment, the moving party must show that there are no genuine issues of material fact and that he "is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3). "A fact is 'material' when its existence or nonexistence may be essential to plaintiff's cause of action." *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751.

"The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions." La.Code Civ.P. art. 966(A)(4). "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." La.Code Civ.P. art. 967(A).

> Personal knowledge means something the witness actually saw or heard, as distinguished from what he learned from some other person or source. The purpose of the requirement of "personal knowledge" is to limit the affidavit to facts which the affiant saw, heard, or perceived with his own senses. Portions of affidavits not based on personal knowledge of the affiant should not be considered by the trial court in deciding a motion for summary judgment.

*Denbury Onshore, L.L.C. v. Pucheu*, 08-1210, p. 18 (La.App. 3 Cir. 3/11/09), 6 So.3d 386, 398, (quoting *Hibernia Nat'l Bank v. Rivera*, 07-962, pp. 8-9 (La.App. 5 Cir. 9/30/08), 996 So.2d 534, 539-40 (citations omitted)).

When considering a motion for summary judgment, courts are not to evaluate the weight of the evidence, but to determine whether there is a genuine issue of triable fact. *Hines v. Garrett*, 04-806 (La. 6/25/04), 876 So.2d 764. Summary judgments are now favored; nonetheless, "factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent's favor." *Willis v. Medders*, 00-2507, p. 2 (La. 12/8/00), 775 So.2d 1049, 1050.

***The Merits***

In its motion for summary judgment, Fidelity Bank sought judgment against Mr. Vaughn on the basis that he guaranteed Westgate's two promissory notes. It supports its motion with documentation evidencing Westgate's promissory notes,

4

Mr. Vaughn's guaranty of the notes, the FDIC's assignment of the notes to it, and an affidavit attesting to the outstanding balances due thereon. Mr. Vaughn does not dispute that he guaranteed Westgate's indebtedness. Instead, he argues that The Bank engaged in actions that caused the real property securing Westgate's indebtedness to be sold below market value. Citing La.Civ. Code art. 3062,[1] he asserts that The Bank's actions impaired the value of the real property securing Westgate's indebtedness and extinguished his suretyship. Moreover, he contends that The Bank's actions violated its obligations of good faith and fairness that are imposed by Louisiana law. He supports his claims with his personal affidavit.

Fidelity Bank argues that the *D'Oench, Duhme* doctrine set forth in *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676 (1942), and codified in 12 U.S.C. § 1823(e), defeats Mr. Vaughn's defense. In *D'Oench, Duhme*, the Supreme Court held that "a borrower [cannot assert] against the FDIC defenses based upon secret or unrecorded 'side agreements' that altered the terms of facially unqualified obligations." *Bell & Murphy & Assocs., Inc. v. Interfirst Bank Gateway, N.A.,* 894 F.2d 750, 753 (5th Cir.), *cert. denied*, 498 U.S. 895, 111 S.Ct.

---

[1] Louisiana Civil Code Article 3062 (emphasis added) states:

> The modification or amendment of the principal obligation, or *the impairment of real security held for it, by the creditor, in any material manner and without the consent of the surety*, has the following effects.

> *An ordinary suretyship is extinguished*.

> A commercial suretyship is extinguished to the extent the surety is prejudiced by the action of the creditor, unless the principal obligation is one other than for the payment of money, and the surety should have contemplated that the creditor might take such action in the ordinary course of performance of the obligation. The creditor has the burden of proving that the surety has not been prejudiced or that the extent of the prejudice is less than the full amount of the surety's obligation.

244 (1990). As codified, the doctrine grants the FDIC and its assignees the power to void any agreement which tends to diminish or defeat their interest:

> [I]n any asset acquired by it as a receiver unless such agreement: (1) is in writing; (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset; (3) was approved by the depository institution's board of directors or its loan committee; and (4) has been continuously an official record of the depository institution.

*Johnson v. Drury*, 99-608, 99-1071 p. 7 (La.App. 5 Cir. 6/2/00), 763 So.2d 103, 108.

Fidelity Bank contends the *D'Oench, Duhme* doctrine requires that The Bank's alleged breach of its contractual obligations of good faith and fair dealing, which resulted in the claimed impairment of Westgate's security for its debt, must be evidenced on the face of Westgate's loan documents maintained by The Bank or they fail. Mr. Vaughn counters that the *D'Oench, Duhme* doctrine applies only to oral agreements, not to obligations imposed by law. He cites *Texas Refrigeration Supply, Inc. v. FDIC*, 953 F.2d 975, 981 (5th Cir. 1992) (alteration in original), which held, in pertinent part:

> *D'Oench, Duhme* does not of itself thwart the assertion of rights for relief from wrongful acceleration and unreasonable sale at foreclosure. *See Garrett v. Commonwealth Mortgage Corporation of America,* 938 F.2d 591, 595 (5 Cir.1991) ("[N]either section 1823(e) nor the *D'Oench, Duhme* doctrine prevents plaintiffs from asserting claims or defenses that *do not depend on agreements*." (emphasis supplied)). We repeat, *D'Oench, Duhme* only protects the FDIC and federally-created bridge banks from oral agreements that for some reason do not become part of the loan record (usually, oral agreements).
>
> Obligations about timely acceleration and the disposal of collateral are implicit in every promissory note. These covenants are inferred in every such loan agreement. *See International Bank, N.A. v. Morales,* 736 S.W.2d 622, 624 (Tex.1987); *Kierstead v. City of San Antonio,* 643 S.W.2d 118, 121 (Tex.1982). And because they are an integral element of the relationship between every borrower and

lender, they cannot be said to be secret or unwritten in the *D'Oench, Duhme* sense.

*Morris v. Azzi*, 866 F.Supp. 149 (D.N.J. 1994), considered and rejected Fidelity Bank's argument that any basis for defeating its claims must be evidenced on the face of The Bank's loan documents. In *Morris*, the plaintiff, a second mortgagee, asserted that the failed financial institution which held the first mortgage on the property at issue breached its obligation to act as a prudent mortgage servicer, causing damage to the plaintiff's secondary interest in the property. The plaintiff argued that the failed financial institution breached the duty of good faith and fair dealing imposed by state law. Consequently, the plaintiff urged that its claim did not arise from an oral or other side understanding between him and the failed institution and was not subject to the limitations of *D'Oench, Duhme* and 12 U.S.C. § 1823(e). The court explained:

> The policy reasons behind *D'Oench, Duhme* and 12 U.S.C. § 1823(e)—ensuring that examiners will be able to make reliable evaluations of bank records, ensuring mature consideration of unusual loan transactions by senior bank officials, preventing collusion, and ensuring that banking authorities will not be misled, *see Langley [v. FDIC*, 484 U.S. 86, 108 S.Ct. 396 (1987)]—cannot logically be applied to bar assertion of such claims; "neither section 1823(e) nor the *D'Oench, Duhme* doctrine prevents plaintiff[] from asserting claims or defenses that do not depend on agreements." *Garrett v. Commonwealth Mortgage Corp*., 938 F.2d 591, 595 (5th Cir.1991). . . .
>
> In *Texas Refrigeration Supply, Inc. v. FDIC*, 953 F.2d 975 (5th Cir.1992), the Fifth Circuit held that *D'Oench, Duhme* did not preclude a borrower from asserting claims for wrongful acceleration and unreasonable disposal of collateral at foreclosure. *Because the claims did not arise from a secret or unrecorded agreement but rather arose from the implied good faith obligation part of every contract under state law, the claims would be apparent to the bank examiners considering the failed thrift's documents in light of relevant law*; *D'Oench, Duhme* and § 1823(e) were, accordingly, held inapposite. *See also . . . In re Beitzell*, 163 B.R. 637 (Bankr.D.D.C.1993) (holding

> *D'Oench, Duhme* does not bar state law claim based on breach of an implied covenant of good faith and fair dealing).

*Morris*, 866 F.Supp. at 155-56 (emphasis added) (second alteration in original).

The *Morris* court also addressed and rejected Fidelity Bank's argument that *FDIC v. Giammettei*, 34 F.3d 51 (2d Cir.1994), is to the contrary, noting that *Giammettei* involved allegations of breach of the duty of good faith and fair dealing in the *inducement* of the execution of the notes at issue, whereas *Bietzell*, 163 B.R. 637, involved allegations arising from the breach of the implied covenant of good faith and fair dealing in the *performance* of obligations under the note at issue. *See* 866 F.Supp. 149, n.6. Mr. Vaughn makes the same allegations made in *Bietzell* with regard to The Bank's disposition of Westgate's properties that secured its loans. *Giammettei* has no application here.

Fidelity Bank also contends that Mr. Vaughn's affidavit does not establish that it is based upon personal knowledge and contains only self-serving statements that are insufficient to rebut its motion for summary judgment and supporting evidence. *Unifund CCR Partners v. Perkins*, 12-1851 (La.App. 1 Cir. 9/25/13), 134 So.3d 626, 631-32 (citations omitted), addressed the issue of the personal knowledge required for summary judgment affidavits, explaining:

> Article 967's requirement of personal knowledge is not satisfied by the mere statement that the affidavit is made on "personal knowledge" since that would tend to make the affiant both judge and witness. The requirement that the affidavit show affirmatively that the affiant is competent to testify to the matters stated therein enables the court to make a determination as to the competency of the affiant as a witness to the material fact at issue. An affirmative showing of competency cannot be established without a predicate showing of personal knowledge. Otherwise, personal knowledge may be based on hearsay or other incompetent evidence.

Mr. Vaughn's affidavit affirmatively shows that he personally communicated with his business partner and Russell Byrd, a former board member

of The Bank who is now a vice-president of the Fidelity Bank, regarding the operations of Westgate, its loans, and the property securing Westgate's indebtedness. We find these statements establish that he has personal knowledge of the statements made therein.

The following statements in Mr. Vaughn's affidavit are pertinent to Fidelity Bank's claim that his statements are self-serving and, therefore, insufficient to defeat summary judgment:

16. Westgate was required to provide the identities of prospective lot buyers to The Bank . . . .

17. I was required to give both personal financial information as well as prospective buyer information directly to Russell Byrd.

18. Russell Byrd used the provided information to identify, negotiate with, and sell property in direct competition with Westgate through bank foreclosure properties and competing businesses that he had a direct stake in.

We consider these statements in light of this court's determination that "[a]ffidavits that are devoid of specific underlying facts to support a conclusion of ultimate 'fact' are not legally sufficient to defeat summary judgment." *Cressy v. Huffines Hyundai McKinney, LP*, 16-712, p. 10 (La.App. 3 Cir. 2/22/17), 212 So.3d 683, 690, *writ denied*, 17-510 (La. 5/19/17), 220 So.3d 751 (quoting *Dumas v. Angus Chem. Co.*, 31,969, p. 7 (La.App. 2 Cir. 8/20/99), 742 So.2d 655, 661). We also observe that a litigant's self-serving affidavit may satisfy the requirements of La.Code Civ.P. art. 967 *and* also create a genuine issue of material fact sufficient to defeat a motion for summary judgment. *Weddborn v. Doe*, 15-1088 (La.App. 4 Cir. 5/4/16), 194 So.3d 80.

Although self-serving in some respects, Mr. Vaughn's affidavit contains specific, underlying facts regarding his personal dealings with his partner in

9

Westgate, Mr. Byrd, and Mr. Byrd's use of information that Mr. Vaughn provided him to allow The Bank to compete against Westgate. We find Mr. Vaughn's affidavit satisfies the requirements of La.Code Civ.P. art. 967 and creates a genuine issue of material fact as to whether The Bank's disposition of Westgate's security constitutes an impairment sufficient to extinguish Mr. Vaughn's suretyship as provided in La.Civ.Code art. 3062.

Fidelity Bank argues that although Mr. Vaughn argued the issue of good faith before the trial court, he did not cite La.Civ.Code arts. 1759 and 1983 in support of his arguments; therefore, we should disregard these arguments on appeal. Louisiana Civil Code Article 3062 cross references La.Civ.Code art. 1759,[2] which provides that good faith governs the performance of obligations. Article 3062 does not cross reference La.Civ.Code art. 1983[3]; however, it requires good faith in the performance of contracts. Article 3062 does not use the term "good faith," yet we believe the duty of good faith is inherent in the relief provided to the surety whose rights have been impaired. Additionally, we observe that "The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal." La.Code Civ.P. art. 2164. Accordingly, we find that Mr. Vaughn's failure to cite La.Civ.Code arts. 1759 and 1983 in its brief before the trial court is not fatal to his arguments to this court.

Fidelity Bank failed to demonstrate that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law, and the trial court erred in granting summary judgment in its favor.

---

[2] Louisiana Civil Code Article 1759 states: "Good faith shall govern the conduct of the obligor and the obligee in whatever pertains to the obligation."

[3] Louisiana Civil Code Article 1983 provides, in pertinent part: "Contracts must be performed in good faith."

## DISPOSITION

For these reasons, the trial court's judgment granting summary judgment in favor of Fidelity Bank is reversed, and the matter is remanded for further proceedings. All costs of this appeal are assessed to Fidelity Bank.

**REVERSED AND REMANDED.**